# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO
_____

RAYMOND MONTOYA,

      Plaintiff,

vs.                                                                          2:17-cv-00081-WJ-SMV

JACOBS TECHNOLOGY, INC.,

      Defendant.


## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court upon Defendant's Motion for Summary Judgment, filed January 18, 2018 **(Doc. 44)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is **GRANTED.**

## BACKGROUND

This is an employment discrimination and retaliation case. Plaintiff is a former employee of Jacobs Technology, Inc. ("Jacobs") and in the Amended Complaint **(Doc. 6)** alleges age and disability discrimination, retaliation, wrongful termination and hostile work environment, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-632.

## UNDISPUTED FACTS[1]

---

[1] Plaintiff objects that many of Defendant's facts are supported by inadmissible hearsay. The reports produced by human resources manager Yolanda Ramos are not hearsay, because the reports are not offered for the truth of the matter asserted, i.e., to show that Plaintiff in fact hit the truck or lied during the investigation. Instead, they are offered to show that Defendant believed there were legitimate reasons for its decision to fire Plaintiff. *See Zamora v. Bd. of Educ. for Las Cruces Pub. Sch.*, 553 F. App'x 786, 790 (10th Cir. 2014) (report not hearsay because defendant offered it to establish effect it had on state of mind when decision was made to terminate plaintiff), *quoting Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir.1993) (holding that statements "offered to establish [defendant's] state of mind in making [an employment] decision[ ] and ... not offered for the truth of the matter

The Court finds that the following material facts are not in genuine dispute:

## I.     Montoya's Employment Background.

Plaintiff Raymond Montoya began working for Jacobs in 1995 as a test technician.  Test technicians are subject to a collective bargaining agreement between Jacobs and the International Association of Machinists and Aerospace Workers.  Plaintiff was subject to "reductions in force" in 2010 and 2012 while working for Jacobs, but both times exercised his rights under the collective bargaining agreement and retained positions with Jacobs.  During the 2010 reduction in force, he was the youngest technician affected.

Montoya did not complain about discrimination or retaliation with respect to either layoff, nor did he file any EEOC charges.  From 2011 through the date of his termination, Plaintiff worked as a systems test mechanical technician.  Plaintiff had multiple supervisors, one of whom was Dennis Smith.

## II.    Montoya's Light Duty and Leave Requests.

Plaintiff occasionally required short periods of light duty for strains to his back and knee, and for eye surgery.  His requests were granted.  The last time he had any physical limitation was from February 5, 2014 to February 20, 2014, when he required two weeks of light duty following eye surgery.  Plaintiff took occasional leave under the Family Medical Leave Act during his employment, mostly to take care of family members.  He took FMLA leave once for a few days in 2008 for his own medical condition – an atrial fibrillation.  In January 2015, Plaintiff requested and was approved for leave in mid-July for his wife's medical leave.

---

asserted" are not hearsay); *see also Adkins v. Tower Corp.*, 141 F.3d 1184 (10th Cir. 1998) (testimony as to what third party said about plaintiff's job performance as not offered to show that performance as lacking, but to demonstrate that employer thought there were legitimate reasons to fire plaintiff);  *Payan v. Vill. of Ruidoso*, 2014 WL 12797213, at *6 (D.N.M. 2014) (Johnson, J.).  Moreover, the police report itself is not hearsay. However, statements therein of others are hearsay, but observations by the officers are not.  It is unclear whether Jacobs received or consulted the police report prior to firing Plaintiff.

Plaintiff testified that he did not consider himself disabled, but that he believes Jacobs perceived him as disabled.

### III. <u>Montoya's Claims of Discrimination and Retaliation</u>.

Plaintiff did not believe he was discriminated against prior to 2012. Montoya identified several alleged acts of discrimination between 2012 and 2015. In one conversation with Department Director Brent Adams, he states that Adams told him "the company was keeping any [sic] eye on [him]." Plaintiff stated this comment made him feel "very uncomfortable," because he perceived "tension in the air." Plaintiff believed this statement to be retaliatory, but did not indicate what it was in retaliation for. Plaintiff also stated that he was discriminated against because he claims younger people received training he did not receive, and he was not promoted.

Plaintiff testified that the promotions were based on seniority and governed by the terms of the collective bargaining agreement. All positions he applied to were governed by the collective bargaining agreement. Plaintiff stated that he did not file any complaints with Jacobs about not being trained or promoted, but he states that he told "management" that he was not being promoted because of his age. Plaintiff did not identify who he told, or when he told them.

Finally, Plaintiff asserted he was discriminated against when he was allegedly hit with a truck on July 10, 2015 and fired thereafter.

### IV. <u>Events of July 10, 2015</u>.

On July 10, 2015, Plaintiff and another employee, Louis Lombardi, were involved in an incident involving a company truck. Plaintiff wanted to borrow a truck from Lombardi, the lead man of a different team. Before Lombardi released the truck to Plaintiff, he drove it over to check with Plaintiff's supervisor. When Lombardi came back to the site, Plaintiff was standing in the middle of the road, facing the truck on the passenger side of the vehicle. Plaintiff alleged

that Lombardi gunned the truck at him and hit the left side of his body. Lombardi alleged that he was driving slowly, tried to move around Plaintiff with two to three feet of clearance, and that Plaintiff shoved or hit the truck with his arms. Lombardi stated that he exited the truck and asked Plaintiff what he was doing. Plaintiff accused Lombardi of hitting him with the truck; Lombardi denied that happened. Plaintiff and Lombardi went together to the office of their supervisor, Dennis Smith.

## V.     Investigation of Events of July 10, 2015.

Upon learning of the incident, Smith alerted Human Resources manager Yolanda Ramos. Smith advised Plaintiff to go to the on-site dispensary for treatment. At the time, Plaintiff only complained of bruising on his left arm and leg, and the hospital released him that same day. The hospital released him with no restrictions. *See* **Exhibit A, p. 134.** That day, Ms. Ramos contacted both Plaintiff and Mr. Lombardi, and seven witnesses present at the incident to meet with them. Ms. Ramos met with each individual and took notes, and advised them that providing false or misleading information could result in termination. Three witnesses observed what happened: Plaintiff, Mr. Lombardi, and Manny Saldivar, a welder who was not employed by Jacobs.

Ms. Ramos interviewed Mr. Lombardi, who explained that he tried to drive the truck around Plaintiff. Mr. Lombardi told Ms. Ramos, Mr. Smith, Mr. Adams, and union representative Chris Valdivia that once the front of the truck was past Plaintiff, Plaintiff "shuffled toward the truck and I don't know if he threw his hands."

Ms. Ramos also interviewed Manny Saldivar, who stated that Plaintiff was facing the truck as it approached and that Mr. Lombardi tried to drive around Plaintiff. Manny Saldivar saw that Plaintiff stepped forward and slapped the truck with one hand and punched it with the

4

other. He confirmed that Plaintiff hit the door with this hands and that Mr. Lombardi did not strike Plaintiff with the truck.

Plaintiff told Ms. Ramos, Mr. Smith, Mr. Adams, and Chris Valdivia, the union steward, that he was facing the truck while standing on the passenger side of the ruck as it approached. Although his right side was facing the passenger vehicle, Plaintiff states he was hit on the left thigh and arm. Ms. Ramos believed that Plaintiff was giving false and misleading testimony about the events because his physical position did not match up to his claimed injuries and his story conflicted with the consistent accounts of both Manny Valdivia and Mr. Lombardi.

Plaintiff admits he never told anyone at Jacobs that he turned around to have his back facing the truck while it approached him.

The Dona Ana Sherriff's Department also conducted an investigation. Police observed no visible bruising on Plaintiff's body. The Dona Ana County Sheriff concluded there was no evidence that an assault with a vehicle occurred.

**VI.**  **Findings Issued by Jacobs and Termination of Plaintiff's Employment.**

On July 13, 2015, Ms. Ramos wrote up a Memo Regarding Investigation, summarizing the findings of Jacobs Management. She provided a summary of each of the accounts she was given by Lombardi, Plaintiff, and Manny Saldivar. The memo recommended that Plaintiff be discharged for violating Company Policy 2710: "(1) being careless or negligent or doing unsatisfactory work; (2) failing to obey safety rules; (3) Engaging in assault; and (4) Instigating conflict among coworkers, unprofessional behavior that disrupts productivity and undermines teamwork and cooperation." Furthermore, the memo also found that Plaintiff made misleading or false statements during the investigation.

Ms. Ramos wrote in the memo that: "we cannot comprehend how an individual who is facing a vehicle, states that he is struck by the passenger side of the vehicle yet is injured on his left thigh and arm." Ms. Ramos also recommended that Mr. Lombardi be suspended for three days and removed from his lead man position, for carelessness.

In the disciplinary action record issued on July 20, 2015, Defendant explained that they discharged Plaintiff because he "acted in a careless unprofessional manner" while on the roadway near the moving vehicle; that two eye witnesses saw Plaintiff hit or punch the vehicle; and that Plaintiff provided false or misleading statement of how the impact occurred. *See* **Deft's Exhibit I**.

Defendant explained that Plaintiff's disciplinary action was more severe because Defendant believed that he punched or hit the truck intentionally and provided misleading and untruthful information on how the incident occurred. Defendant stated that it believed that Lombardi did not intentionally strike anyone, nor was there a reason to believe he misrepresented information to Jacobs.

### VII.  Hiring of an Additional Test Technician.

Prior to Plaintiff's termination, Jacobs planned to hire additional individuals because of ongoing projects. The job was posted pursuant to the terms of the Collective Bargaining Agreement. An individual aged 42 years old was initially offered the Systems Test Tech role in propulsion, but the candidate turned down the offer. Gabriel Zavala then applied for the job. He was the only internal candidate for the role of Systems Test Tech C in propulsion. At the time, Mr. Zavala worked for GeoControls, a partner organization which was also subject to the Collective Bargaining Agreement.

**VIII.    Plaintiff's Additional Facts.**[2]

Plaintiff is the only employee who complained of age or disability discrimination. Plaintiff was not subject to discipline between 2011- 2015.  Plaintiff testified that his skills were in demand.

Mr. Lombardi was convicted of trespassing, assault, criminal mischief, and receiving stolen goods, as a teenager.  He was born in 1972, and has no record of disabilities, work restrictions, or FMLA leave.  However, Defendant had no knowledge of Mr. Lombardi's teenage crimes.  Moreover, Mr. Lombardi was disciplined by a prior employer for ruining a tire on a work truck.  Mr. Smith was aware of that prior disciplinary action.

## LEGAL STANDARD

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Munoz v. St. Mary Kirwan Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.* The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

---

[2] Plaintiff asserted additional facts in his response.  Defendant did address them.  Therefore, the Court will consider the asserted facts as undisputed, to the extent they are properly supported and not otherwise disputed elsewhere. However, the Court finds that most of these facts are irrelevant or misstates the record.

**DISCUSSION**

Because Plaintiff lacks direct evidence, the Court analyzes all four discrimination and retaliation claims under the ADA and ADEA under the burden-shifting framework described in *McDonnell Douglas*. Under this framework, Plaintiff must first establish a prima facie case. If Plaintiff does so, the burden of production shifts to the Defendant to show that "it had a legitimate, nondiscriminatory reason for the adverse action." If the employer makes this showing, Plaintiff then bears "the full burden of persuasion to show that the defendant discriminated on the illegal basis" of age or disability. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124–25 (10th Cir. 2005); *Nunez v. Lifetime Prod., Inc.*, 2018 WL 921537, at *1–2 (10th Cir. 2018). "The plaintiff may do so by showing that the proffered reason is pretextual." *Bryant*, 432 F.3d at 1124–25.

**I.     Disability Discrimination Claim under Americans with Disability Act.**

Defendant seeks summary judgment on Plaintiff's Count II, Disability Discrimination under the ADA.

A.     *Prima Facie* Case.

To establish a *prima facie* case, Plaintiff must show that (1) he was a disabled person as defined by the ADA; (2) he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) he was fired because of his disability. *Kilcrease v. Domenico Transportation Co.*, 828 F.3d 1214, 1218–19 (10th Cir. 2016). Defendant argues that Plaintiff failed to establish any of the elements of his *prima facie* case.

i.     Disability.

Having a "disability" means: (A) having a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an

impairment; (C) being regarded as having such an impairment (as described in paragraph (3). 42 U.S.C. § 12102(1).

Initially, Plaintiff does not have an actual disability, i.e., a physical impairment that substantially limits one or more major life activities. Plaintiff testified that he was not disabled.[3] Moreover, Plaintiff has not asserted any facts or evidence that indicate he had a substantial impairment that limited a major life activity. Instead, Plaintiff has presented evidence of multiple temporary, short-term work reductions for various issues, such as back or knee strains. His last work reduction or restriction for a major life activity was in 2013, two years prior to his termination. Plaintiff also took two weeks of light duty in February 2014 following eye surgery. Plaintiff presented no evidence of a chronic or episodic condition, and he admitted the impairments did not recur. Moreover, Plaintiff presented no evidence that the truck incident left him with an impairment that substantially limited a major life activity.[4] *Allen v. SouthCrest Hosp.*, 455 Fed. Appx. 827, 833 (10th Cir. 2011) (it is Plaintiff's "summary judgment responsibility to present evidence sufficient to meet her burden of production on the 'disability' element of her prima facie case").

Plaintiff argues that after the ADAAA amendments of 2008, the "transitory and minor" exception does not apply to actual disabilities. *See* 29 C.F.R. § 1630.2(j)(1)(ix) ("The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section."). The Court agrees that a temporary impairment does not *per se* disqualify Plaintiff from being considered disabled. However, as explained above,

---

[3] Plaintiff admitted to Defendant's Fact 11 – which states that he "occasionally required short periods of light duty for minor strains to his back and knee." Moreover, Plaintiff testified that he was not disabled, and that he requested a fair number of short work reductions, all less than six months, and were non-recurring. **Deft's Exhibit A, p. 104.** He has not pointed to any facts or evidence showing that he had sustained work reductions, or that he was disabled after the truck incident, or any condition that substantially limited a major life activity. Finally, Plaintiff admitted that he was not disabled in deposition testimony.

[4] His medical records indicated that he had bruising on his left arm and leg, but he was discharged from the hospital. Plaintiff walked into the investigatory meeting with no apparent injuries.

Plaintiff presented no evidence indicating how any impairment substantially limited a major life activity. *See* 29 C.F.R. § 1630.2(j)(4)(i-ii) (listing factors for determining whether an impairment substantially limits a major life activity). For the reasons stated above, records of these requested work reductions also do not satisfy the disability prong. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129–32 (10th Cir. 2003) (second prong requires a record of an impairment that substantially limits a major life activity), *cited in Chavez v. Adams Cty. Sch. Dist. No. 50*, 2016 WL 1426919, at *5 (D. Colo. 2016).

Instead, Plaintiff argues that Defendant regarded or perceived him as disabled because he took medical leave and requested reduced (although temporary) workload reductions, multiple times. "Under the ADAAA, for a plaintiff alleging disability discrimination to show that the employer regarded him as having an impairment, the plaintiff must show that (1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016). Plaintiff need not show that Defendant regarded him as having an impairment that substantially limit him from being able to perform a major life activity. *Id.*

Here, Plaintiff's temporary work reductions for knee and back strains, and eye surgery, were transitory or minor, and therefore do not qualify under the "regarded as disability" prong. Plaintiff admitted that all work reductions or impairments lasted for less than six months, and were non-recurring. *See* 42 U.S.C.A. § 12102(3) (The regarded-as disabled prong "shall not apply to impairments that are transitory or minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.").

ii.    <u>Qualified Individual</u>.

Defendant argues that Plaintiff is not a qualified individual, because he committed misconduct on the job. This argument is more appropriately considered under the pretext prong of the *McDonnell-Douglas* framework. Moreover, the record indicates that Plaintiff can perform the essential functions of the position, and Defendant does not argue otherwise.

### iii. Causality.

Finally, Plaintiff is required to present some affirmative evidence that disability was a determining factor in the Defendant's decision. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323–24 (10th Cir. 1997) "The burden is not onerous, but it is also not empty or perfunctory. The plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, [he] would be entitled to judgment as a matter of law." *Id.* (internal citations and quotation marks omitted); *Spielman v. Blue Cross & Blue Shield of Kansas, Inc.*, 33 F. App'x 439, 445 (10th Cir. 2002). Plaintiff must present some evidence that "Defendant terminated him under circumstances that give rise to an inference that the action as based on his disability." *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1259 (10th Cir. 2001), *citing Morgan,* 108 F.3d at 1323.

Plaintiff has not alleged he was rendered disabled by the truck incident. Plaintiff's last leave was for recovery for an eye surgery in February 2014, after which he returned to full work duty. This was 17 months prior to his termination.

Here, Plaintiff failed to demonstrate there is a nexus between his employment termination following the truck incident, and his medical condition. *See, e.g., Melin v. Verizon Bus., Inc.*, 595 F. App'x 736, 740 (10th Cir. 2014). Initially, the Court notes that Plaintiff has not alleged – and the record does not show – that Plaintiff was rendered disabled following the truck incident. His last protected activity, recovery from eye surgery in February 2014– is too distant to

establish an inference of discriminatory motive.  *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1260 (10th Cir. 2001); *see also Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878–79 (10th Cir. 2004) (ten months is too long a time laps, standing alone, to support inference of causal connection between disability and termination).  Plaintiff argues that he felt uncomfortable requesting work reductions or leave because of impairments, but did not give any evidence that Defendant ever expressed displeasure. Plaintiff said "it was just the way I was feeling." **Ex. A, p. 102.**  Rather, Defendant's repeated accommodations, over a long period of time, do not support an inference of discrimination.  *Bones*, 366 F.3d at 879.

Moreover, Plaintiff points to nothing in the record that indicates he was disabled or perceived to be disabled by Defendant after the truck incident.  Rather, his medical records indicate that he had bruising and no restrictions, and management saw him walk into the investigatory meeting without issues.

      B.      <u>Legitimate Reason for Discharge</u>.

Ms. Ramos, Defendant's Human Resources Manager; Dennis Smith, Plaintiff's direct supervisor, and Brent Adams, all believed that Plaintiff lied about the truck incident and that he was not hit by the truck, but rather, that he hit the side of the truck.  This conclusion was based on the testimony of two eye-witnesses.  Ms. Ramos' recommendation for discipline, and the ultimate reasons for Plaintiff's discharge, were that he was careless; he punched or hit the truck intentionally; and provided misleading and untruthful information during the investigation.  This perceived misconduct and dishonesty is a legitimate, non-discriminatory reason for discharge. The Court addresses the pretext prong below.

## II.      **Age Discrimination in Employment Act.**

Plaintiff argues that Defendant discriminated against him based on his age, in violation of the ADEA, by terminating him, and by subjecting him to a hostile work environment.[5]

A.     *Prima Facie* Case.

"In order to establish a prima facie case of discrimination under the ADEA, a plaintiff must ordinarily prove that: (1) she is within the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position was filled by a younger person." *Kosak v. Catholic Health Initiatives of Col.*, 400 F. App'x 363, 366 (10th Cir. 2010). It is undisputed that Plaintiff is within the protected class, was discharged, and the position was filed by a younger person. As explained above, Plaintiff was qualified for the position. Therefore, Plaintiff has established his *prima facie* case.

Plaintiff also argues that he was subjected to a hostile work environment. However, Plaintiff did not give any examples of allegedly discriminatory actions or words, but merely stated he was made to feel "uncomfortable." This is in no way sufficient to satisfy his burden for a hostile work environment claim. *See generally MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (setting forth hostile work environment standard), *and Asbury v. Geren*, 582 F. Supp. 2d 1323, 1338 (D.N.M. 2008) (Black, J.) (district court must examine the frequency and severity of conduct, along with whether conduct is threatening or humiliating, or

---

[5] It is unclear whether Plaintiff is asserting a "failure-to-promote" claim under the ADEA. If he does assert one, he failed to carry his burden. *See, e.g., MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1277–78 (10th Cir. 2005) (setting out standard for failure to promote claim under the ADEA). Although in his deposition testimony Plaintiff conclusory alleges that Defendant failed to promote him, Plaintiff did not set forth anything in the record or brief to support his burden of proof. For example, there is no evidence whether, and when, Plaintiff applied for promotions. Moreover, it appears that asserts that the failure to promote occurred in 2010. Moreover, as Defendant argues, it appears this failure to promote claim is time-barred, and Plaintiff does not argue otherwise. *see generally Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011); *see also Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) ("When a complaint alleges multiple discrete acts, the limitations period runs separately for each act.").

merely offensive, and whether the conduct unreasonably inferences with plaintiff's work performance).

B.     <u>Legitimate Reason</u>.

As explained above, Defendant carried its burden of producing a legitimate, non-discriminatory reason for terminating Plaintiff.

## III.     <u>Retaliation under the ADA and ADEA.</u>

The *Mcdonell-Douglas* framework described above also applies to retaliation claims under the ADA and ADEA.

A.     <u>*Prima Facie* case</u>.

"[T]o establish a prima facie case of retaliation under the ADA [and ADEA], [the employee] must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Winston v. Ross*, 2018 WL 1061377, at *3 (10th Cir. 2018) (internal quotation marks omitted)*. See also McElroy v. Am. Family Ins*., 630 F. App'x 847, 850 (10th Cir. 2015).

"The ADEA's anti-retaliation provision forbids an employer from discriminating against an employee because she 'has opposed any practice made unlawful' by the statute, or because she 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation' under the statute." *Hill v. Steven Motors, Inc.*, 97 F. App'x 267, 277–78 (10th Cir. 2004), *quoting* 29 U.S.C. § 623(d). The anti-retaliation provisions of the ADA are materially identical to the ADEA's provisions." *Id.* Protected activity includes opposing or complaining about age discrimination by the employer. *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1278–79 (10th Cir. 2005).

A plaintiff can satisfy the third element by adducing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *See Winston v. Ross*, 2018 WL 1061377, at *3 (10th Cir. 2018). "To establish the requisite causal connection between his protected conduct and termination, Mr. Hinds must show that Sprint was motivated to terminate his employment by a desire to retaliate for his protected activity." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008); *See also MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1278–79 (10th Cir. 2005).

Plaintiff filed a complaint through his union, which went nowhere. Plaintiff stated he never filed a complaint with Jacobs. However, he stated that he complained to his supervisor, Mr. Smith, about age discrimination, because he was not receiving training or promotions. He also went to HR to state that he was not receiving the tools he needed to complete his job. Plaintiff states that Mr. Smith has written copies of his complaints, but these were not produced in the record. There is no evidence that Defendant was aware of these complaints. Plaintiff also asserts that he told "management" a few times about age discrimination, but he could not specify who he told those complaints to, when, or the substance of those complaints. Therefore, the Court cannot conclude that Plaintiff engaged in a protected activity opposing age discrimination under the ADEA. It is unclear whether Plaintiff engaged in a protected activity under the ADEA, as Plaintiff has not identified what was said or when it was said. *See McElroy v. Am. Family Ins.*, 630 F. App'x 847, 851 (10th Cir. 2015) ("McElroy's brief doesn't tell us what he said to Ledgerwood or when he said it. Without such information, we can't determine whether the complaint was protected, much less its proximity to any adverse employment action."); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer

his or her concern that the employer has engaged in a practice made unlawful by the ADEA."). Moreover, Plaintiff has not established a causal connection between his complaints of age discrimination and his termination. There is no evidence of the temporal proximity between the two. Moreover, Plaintiff has not asserted any other circumstances that may create an inference of discrimination.

However, Plaintiff's requests for reduced work load or leave following back or knee strain, or eye surgery, could be interpreted as a protected activity under the ADA. But Plaintiff again failed to establish a causal connection. The last such request was seventeen months prior to his termination. These requests for accommodation are too far removed temporally to raise an inference, by themselves, of a discriminatory action. Moreover, the fact that he received accommodations– without any evidence of push back – weighs against a finding of retaliatory intent.

Plaintiff asserts that the protected activity was taking FMLA leave time, and he was fired because he used his FMLA time. He apparently took FMLA leave once in 2008 for his own medical condition. The exercise of his rights under the FMLA in 2015 to take leave for the birth of his daughter does not constitute a protected activity under the ADA or ADEA. Plaintiff's use of FMLA time does not raise a claim for retaliation for retaliation under the ADA or ADEA. *McElroy v. Am. Family Ins.*, 630 F. App'x 847, 851 (10th Cir. 2015) (opposition to employer's conduct only protected if it opposes a practice made unlawful by ADEA or ADA).

**IV.** <u>**Pretext Analysis for All Claims.**</u>

Even if Plaintiff carried his *prima facie* burden, the Court concludes that Plaintiff failed to carry his burden of showing that Defendant's legitimate reason for discharge was a pretext, for all four claims of discrimination and retaliation.

Plaintiff bears the burden of showing that there is a genuine issue of material fact as to whether the proffered reasons are pretextual. "A pretext argument requires the court to examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) (internal quotation marks and citations omitted). "The plaintiff may establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (internal quotation marks omitted). Thus, the Court does not determine whether the Defendant's decisions were correct, rather only "whether the employer honestly believed its reasons and acted in good faith upon them." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007). Evidence of pretext often includes: (1) evidence that defendant's stated reason was false; (2) evidence that Defendant was acting contrary to company policy; and (3) evidence that Plaintiff was treated differently from similarly situated employees. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307–08 (10th Cir. 2017).

Plaintiff argues that Defendant's reason for discharge was a pretext, because (1) Plaintiff suffered disparate treatment (i.e. discipline) compared to Mr. Lombardi, and (2) the claim he was untruthful during the investigation is not reasonable.

Defendant's investigation was reasonable and thorough, and included talking to at least seven witnesses. Two witnesses, Mr. Lombardi and Manny Valdivia, told Defendant they saw the truck incident. Thus, Lombardi's story was independently corroborated, while Plaintiff's story was not.

Moreover, Defendant also reasonably found Plaintiff's story of the incident implausible. He told them he was facing the truck, on the passenger side, as the truck was coming toward him. Yet – he said he was hit on his left side. It is undisputed that Plaintiff never told them that he turned his back toward the truck. *See* **Deft's Ex. A, p. 147:14-25**. Thus, Ms. Ramos reasonably believed that Plaintiff's story was misleading.

Thus, based on this information, Defendant determined that Mr. Lombardi was merely careless, while Plaintiff intentionally hit the truck and gave misleading statements during the investigation. Based on the information available to Defendant, disparate treatment was warranted between Lombardi and Plaintiff, because they were not similarly situated.[6] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1311 (10th Cir. 2017) ("showing disparate treatment—by demonstrating that the employer treated employees similarly situated to the plaintiff employee differently (i.e., more favorably)—is a particularly potent instrument to discredit an employer's allegedly legitimate reasons.").

Plaintiff also argues that there is a genuine issue of material fact whether (1) he hit the truck, or the truck hit him; and (2) whether he was misleading or untruthful during the

---

[6] It is unclear whether Defendant had access to the police report prior to the issuance of the disciplinary action report on July 20, 2015. The officers observed no visible bruising on Plaintiff.

investigation. Plaintiff argues that this precludes summary judgment. However, whether Plaintiff in fact hit the truck or lied during the investigation is not at issue. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000), *citing McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998) (finding that plaintiff failed to establish pretext where the defendant discharged plaintiff after conducting an investigation into a subordinate employee's allegations of sexual misconduct on the part of the plaintiff and believed the allegations to be true, even though plaintiff presented evidence to the district court that the allegations may have been false). Rather, at issue is the sincerity of the employer's proffered belief for the termination. *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) ("[A]t issue is whether the evidence of Plaintiff's misconduct presented to [the decisionmakers] was so weak that a rational factfinder could infer that [the] expressed reason for terminating Plaintiff must have been pretextual.") (internal quotation marks omitted).

Plaintiff also argues that he was never able to give his side of the story to Defendant. However, the undisputed facts and record show that Ms. Ramos met with Plaintiff, interviewed him, and asked him questions about the truck incident. She created a report of that interview. **Deft's Exhibit D.**

There is nothing to indicate weakness, implausibility, or inconsistencies in Defendant's reasons for firing Plaintiff.[7] Therefore, the Court concludes that the record contains no evidence from which a reasonable fact finder could conclude that Defendant's stated reasons for terminating Plaintiff were pretextual.

---

[7] Additionally, any argument that the reasons for his termination were a pretext as to the age claims is undermined by the fact that the decision makers were all over forty years old, and in the protected class. *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1183 (10th Cir. 2006), *cited in Points v. Honeywell Int'l, Inc.*, 2015 WL 13667298, at *9 (D.N.M. 2015). Moreover, Defendant first offered the position to someone in the protected class, who turned the position down. The only remaining internal applicant was in his thirties. This undermines Plaintiff's claim that his termination was motivated by age.

## V. __Failure to Accommodate Disability__.

For Count III, Plaintiff alleged that Defendant failed to accommodate his disability. In his response to summary judgment, it appears that Plaintiff voluntarily dismisses this theory, because there is evidence that Defendant accommodated Plaintiff. *See* **Doc. 45, p. 20.** The Court therefore dismisses Count III.

### CONCLUSION

The Court concludes that Plaintiff failed to establish his *prima facie* case on the ADA and ADEA retaliation claims, and the ADA discrimination claim. Alternatively, Plaintiff failed to establish that Defendant's legitimate, non-discriminatory reason for termination was a pretext, as to all claims. Therefore, the Court issues judgment in favor of Defendant on all counts in the Amended Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 44)** is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order. Judgment is issued in Defendant's favor on all counts.

_____
CHIEF UNITED STATES DISTRICT JUDGE